DWAYNE DONALD DIAZ, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 37085

July 18, 2002

50 P.3d 166

Rose, J., dissented.

---

[23]See *Anderson*, 31 Cal. Rptr. 2d at 413.

*Robert A. Grayson,* Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, SHEARING, J.:

This case involves alleged violations of the Interstate Agreement on Detainers (IAD). Codified in Nevada at NRS 178.620, the IAD provides for expeditious and orderly resolution of criminal charges pending in one state against a prisoner in another state. While subject to a pending, untried indictment in Nevada, appellant Dwayne Diaz was incarcerated in California on unrelated charges. Diaz was ultimately brought to trial in Nevada and convicted of the felony charge. Diaz appeals his conviction, alleging violation of the IAD's speedy trial and antishuttling provisions. We conclude that Diaz's conviction did not violate the IAD and, therefore, affirm the district court's judgment of conviction.

### FACTS

On February 11, 1998, the State of Nevada indicted Diaz for driving while under the influence of alcohol, with two or more

prior convictions. Diaz appeared for his arraignment on April 14, 1998, and pleaded not guilty. On July 13, 1998, Diaz filed a motion to dismiss the indictment, but failed, on July 18, 1998, to appear for his preliminary hearing. The State thereafter issued a warrant for his arrest.

In approximately January 1999,[1] Diaz was arrested in California for another offense and committed to California state prison. Based upon the pending indictment, Nevada apparently filed a detainer against Diaz, which triggered his right, under the IAD, to demand disposition of the indictment.[2] Diaz executed his demand for disposition of the Nevada indictment on June 3, 1999. At that time, Diaz's previously filed motion to dismiss the indictment was still pending. On July 14, 1999, Diaz was brought to Nevada to await trial. However, trial was not held because, on September 10, 1999, the district court granted Diaz's motion to dismiss and Diaz was returned to California. On October 27, 1999, Diaz was paroled from California prison.

On June 15, 2000, this court reversed the order of dismissal. Trial was again delayed when, on September 28, 2000, Diaz filed a second motion to dismiss, this time alleging violation of the IAD's speedy trial and antishuttling provisions. On October 10, 2000, the district court denied Diaz's motion. Trial was held on October 17, 2000, at which time Diaz pleaded guilty, reserving the right to appeal the IAD issues.

## DISCUSSION

Diaz alleges that this court should reverse his conviction because the State violated the IAD by failing to bring him to trial within the time required by the IAD, and because it violated the IAD's antishuttling provision by returning Diaz to California before bringing him to trial. We disagree.

### The IAD's speedy trial provision—tolling

This case is governed by Article III of the IAD.[3] Article III provides that once Nevada files a detainer against a prisoner in

---

[1]The precise date of incarceration is not clear from the record before this court, but is not relevant to this appeal.

[2]When the State of Nevada filed the detainer is not exactly clear. The State claims that it may not have filed a detainer prior to Diaz's request for disposition, such that the IAD may not apply to this case. This court recently noted that the IAD is only triggered when a written detainer has been filed prior to a prisoner's demand for disposition. *Theis v. State*, 117 Nev. 744, 753 n.21, 30 P.3d 1140, 1145 n.21 (2001). However, because the State failed to raise this issue below, and because it does not affect the outcome of this appeal, we decline to consider it. *Walch v. State*, 112 Nev. 25, 30, 909 P.2d 1184, 1187 (1996).

[3]NRS 178.620, art. III(a).

another state, the prisoner may request timely disposition of the untried indictment upon which the detainer was based.[4] Once the request for disposition has been transmitted to the prosecuting officer and the appropriate court, the State has 180 days to bring the defendant to trial.[5]

Here, the State failed to bring Diaz to trial within 180 days of his request for disposition. The delay in trial, however, was not caused by the State, but by Diaz's filing of two pretrial motions to dismiss. The United States circuit courts of appeals are divided as to whether the IAD period is tolled during the time required to resolve matters raised by the defendant.[6] The Ninth Circuit Court of Appeals has held that delays attributable to a defendant's own motions toll the IAD period.[7] Likewise, this court has previously held that the time period for trial is tolled during ''those periods of delay occasioned by the defendant.''[8] We hold that the IAD period was tolled during the pendency of Diaz's pretrial motions to dismiss, such that the State's failure to bring Diaz to trial within 180 days of his request for disposition was not a violation of the IAD.[9]

Diaz initiated his first motion to dismiss even before he requested disposition of his indictment under the IAD. The IAD

---

[4]*Id.*

[5]*Id.* This case is not, as Diaz suggests, governed by Article IV of the IAD. Article IV applies only where the state, not the prisoner, initiates disposition. NRS 178.620, art. IV(a); *see also Alabama v. Bozeman*, 533 U.S. 146, 150 (2001); *U.S. v. Kurt*, 945 F.2d 248, 251 (9th Cir. 1991).

[6]*See U.S. v. Whiting*, 28 F.3d 1296, 1307 (1st Cir. 1994) (discussing the division between the circuits). *Whiting* explained that the United States Courts of Appeals for the Fifth and Sixth Circuits only toll the IAD period when the defendant is unable to stand trial due to mental or physical incapacity. *Id.* (citing *Birdwell v. Skeen*, 983 F.2d 1332, 1340-41 (5th Cir. 1993); *Stroble v. Anderson*, 587 F.2d 830, 838 (6th Cir. 1978)). Whereas the First, Second, Fourth, Seventh, and Ninth Circuits have all construed the provision to allow tolling during the time required to resolve matters raised by the defendant. *Id.* at 1307 & n.9 (citing *U.S. v. Johnson*, 953 F.2d 1167, 1172 (9th Cir. 1992); *U.S. v. Nesbitt*, 852 F.2d 1502, 1516 (7th Cir. 1988); *United States v. Scheer*, 729 F.2d 164, 168 (2d Cir. 1984); *United States v. Hines*, 717 F.2d 1481, 1486-87 (4th Cir. 1983)).

[7]*Johnson*, 953 F.2d at 1172 (where a delay is excludable under the Speedy Trial Act because it is attributable to defendant's own motions, the IAD clock is also tolled).

[8]*Snyder v. State*, 103 Nev. 275, 277, 738 P.2d 1303, 1305 (1987).

[9]*See Johnson*, 953 F.2d at 1172; *U.S. v. Dawn*, 900 F.2d 1132, 1136 (7th Cir. 1990); *United States v. Roy*, 771 F.2d 54, 59 (2d Cir. 1985); *State v. Batungbacal*, 913 P.2d 49, 56 (Haw. 1996); *Com. v. Petrozziello*, 491 N.E.2d 627, 632-33 (Mass. App. Ct. 1986); *State v. McGann*, 493 A.2d 452, 456-57 (N.H. 1985); *State v. Bernson*, 807 P.2d 309, 310-11 (Or. Ct. App. 1991).

clock did not start running until that motion was fully resolved on June 15, 2000, when this court reversed the lower court's decision to dismiss.[10] On September 28, 2000, 105 days later, Diaz filed his second motion to dismiss alleging delay in excess of the IAD period. At that time the IAD clock again stopped running and did not restart until the district court denied the motion on October 10, 2000. Six days later, on October 17, 2000, after the IAD clock had been running for only a total of 112 days, the district court proceeded to trial, well within the limits of the IAD's speedy trial provision.

### The IAD's antishuttling provision

The district court's conviction of Diaz, likewise, did not violate the IAD's antishuttling provision. The IAD's antishuttling provision requires that trial be held on any pending indictment prior to the return of the defendant to the original place of imprisonment, or the indictment is to be dismissed with prejudice.[11] Diaz alleges that the State violated this provision by first returning him to California, after his motion to dismiss the indictment was granted, and then second, by reinstating proceedings pursuant to that same indictment in Nevada once this court reversed the district court's decision to dismiss. We disagree.

The antishuttling provision is not violated when the ''shuttling'' is the result of an erroneous order of the trial court that is later overturned.[12] The IAD is designed to systemize the disposition of untried indictments and detainers so as to minimize disturbance to the defendant's rehabilitation in the confining jurisdiction.[13] A contrary result would defeat the purpose of the IAD by prolonging the defendant's absence from the confining jurisdiction.[14] We note that, here, by the time the indictment was reinstated and Diaz was returned to Nevada for trial, he was no longer incarcerated in California.

This case is easily distinguishable from *Alabama v. Bozeman* where the United States Supreme Court recently found a violation

---

[10]*See Roy*, 771 F.2d at 59; *Petrozziello*, 491 N.E.2d at 633; *Bernson*, 807 P.2d at 310.

[11]NRS 178.620, art. III(d); NRS 178.620, art. IV(e). The identical provision appears in both Article III and Article IV.

[12]*See State v. Burrus*, 729 P.2d 926, 934 (Ariz. Ct. App. 1986); *Shanks v. Com.*, 574 S.W.2d 688, 690 (Ky. Ct. App. 1978).

[13]NRS 178.620, art. I; *United States v. Reed*, 620 F.2d 709, 711 (9th Cir. 1980).

[14]*See Burrus*, 729 P.2d at 934.

of the IAD's antishuttling provision.[15] In *Bozeman*, a prisoner in Florida was subject to untried charges in Alabama.[16] An Alabama district attorney obtained temporary custody of the defendant for arraignment.[17] Bozeman spent only one night in an Alabama county jail, appeared in local court the next morning, and was returned to Florida later that day.[18] Approximately one month later, he was brought back to Alabama for trial on the same charges. Rejecting Alabama's *de minimis* argument, the Supreme Court held that Bozeman's prior transfer from Florida to Alabama, even if only for one night, precluded, under the antishuttling provision, his return to Alabama for trial.[19]

*Bozeman* is factually distinct from the case at hand. The shuttling in *Bozeman* occurred while the charges against Bozeman were still pending—Bozeman was brought to Alabama for arraignment and then returned to Florida to await trial. Here, the shuttling occurred because the charges against Diaz were dismissed—Diaz was brought to Nevada so that he could argue his motion to dismiss, and was returned to California when that motion was granted. In *Bozeman*, there was no reason why Alabama could not have detained Bozeman until trial rather than shuttling him back and forth. Here, by contrast, once the charges against Diaz were dismissed, Nevada had no authority upon which to detain Diaz. Sending Diaz back to California was unavoidable.

## CONCLUSION

Because we conclude that Diaz's conviction did not violate the IAD, we affirm the district court's judgment of conviction.

BECKER, J., concurs.

ROSE, J., dissenting:

I dissent because I believe we should fashion a rule that gives effect to the express purpose of the IAD—to provide for expeditious dispositions of outstanding charges against persons imprisoned in other jurisdictions[1]—but a rule that is fair to the district courts and the prosecutors as well. I would not recognize a tolling of the 180-day time limit unless it is demonstrated that the defendant has engaged in conduct intended to cause a delay in bringing the case to trial.

---

[15]533 U.S. at 152-57.

[16]*Id.* at 151.

[17]*Id.*

[18]*Id.*

[19]*Id.* at 153-57.

[1]*See* NRS 178.620, art. I.

A defendant who has invoked the benefits of the IAD should not lose them simply because he files a pretrial motion. I would certainly not want a defendant to feel restricted in litigating his case simply because he is fearful that it will effectuate a tolling of his demand to be brought to trial. But any pretrial motion from the defendant that is brought with the intent to delay the trial should toll the 180-day time limit, such as a motion to continue or a complicated motion that is filed on the eve of trial.

Applying these principles to the case at hand, I would not toll the 180-day time limit simply because Diaz filed the first motion to dismiss. The motion to dismiss did not, in and of itself, necessarily delay the trial. Since there is no evidence of intent to delay here, I would not toll the statutory 180-day time limit for the period of time from when Diaz's IAD demand was received until his motion to dismiss was improvidently granted by the district court. Obviously, however, the time should be tolled from the time the motion to dismiss was granted until reversed by this court and the remittitur issued.

When this court reversed the case and prosecution was renewed, Diaz demanded that he be brought to trial, and he filed a second motion to dismiss. Again, there is nothing that demonstrates that this motion was brought to delay the court in bringing this case to trial. Thus, that time should not have been tolled either.

By not tolling the time when the two motions to dismiss were pending before the district court, the total time it took to bring this defendant to trial after his IAD demand was well over 200 days, and thus in violation of the IAD's 180-day time limit. Accordingly, I would vacate the judgment of conviction entered against Diaz and remand for the district court to dismiss the charges.

The rule I would prefer to adopt balances the purpose of the IAD with the realities of bringing a defendant to trial in six months.[2] I think this approach is more equitable, even though I acknowledge that the approach taken by the majority is the prevailing view in the United States.

---

[2] *Cf. U.S. v. Whiting*, 28 F.3d 1296, 1307 (1st Cir. 1994) (noting that the time period in disposing of a pretrial motion should not toll the 180-day time limit when the defendant timely advises the district court that he or she is claiming the IAD's protections and the district court took more time than was necessary to resolve the motion).